UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Genmar Holdings, Inc., Genmar Industries, Inc., an Indirect Subsidiary of Genmar Holdings, Inc., and Lund Boats, a Division of Genmar Industries, Inc., | ) | Civil File No. 01-CV-639 JRT/RLE |
| Plaintiffs, | ) | **SETTLEMENT AGREEMENT** |
| vs. | ) | |
| Gary Duane Schultz, | ) | |
| Defendant | ) | |

This Settlement Agreement ("Agreement") is made and entered into by and between Genmar Holdings, Inc., Genmar Industries, Inc., an Indirect Subsidiary of Genmar Holdings, Inc., and Lund Boats, a Division of Genmar Industries, Inc. ("Lund Boats") (referred to hereafter collectively as "Plaintiffs"), and Gary Duane Schultz ("Schultz") as of January 10, 2002. Barbara A. Schultz, Lance A. Schultz, Kirstin N. Schultz, and Drew Collin Schultz (referred to hereafter collectively as "the Schultz Family") have also agreed to be bound by the terms set forth herein. All terms and conditions of this Agreement are effective upon execution by all the parties and the Schultz Family.

**EXHIBIT A**

## I. RECITALS

WHEREAS, Genmar Holdings, Inc., Genmar Industries, Inc., and Lund Boats, all Delaware corporations, are the Plaintiffs and Schultz, an individual, is the Defendant in an action entitled *Genmar Holdings, Inc., et al., v. Schultz*, Civil Action No. 01-CV-639, now pending in the United States District Court for the District of Minnesota (the "Action");

WHEREAS, the Plaintiffs allege in the Action that Schultz wrongfully and fraudulently converted and embezzled monies from the Plaintiffs;

WHEREAS, the Plaintiffs allege that a portion of said wrongfully and fraudulently converted and embezzled monies was transferred to members of the Schultz Family;

WHEREAS, the Plaintiffs have attached certain property of Schultz's through an "Order for Attachment," dated April 17, 2001 and Supplemental Order for Attachment dated April 23, 2001 ("Attachment Order"), copies of which are annexed as Exhibit A;

WHEREAS, the parties now desire to fully and finally settle the Action without the need to engage in protracted and expensive litigation; and

WHEREAS, the parties and the Schultz Family have agreed to a full settlement of any and all of the Plaintiffs' claims and issues in dispute between them in accordance with the terms of this Agreement.

NOW THEREFORE, in consideration of the payments and transfers called for herein, the sufficiency of which is hereby acknowledged by the parties and the Schultz Family, and based on the foregoing recitals and the obligations and covenants set forth below, the parties and the Schultz Family hereby agree as follows:

## II. AGREEMENT

### A. Confession of Judgment

Schultz admits to the conduct alleged in the Complaint and admits that he acted alone through means of deceit to wrongfully and fraudulently convert and embezzle monies from Plaintiffs, and has executed a Confession of Judgment in the amount of $13,501,249.15 in favor of the Plaintiffs simultaneously with this Agreement. A copy of this Confession of Judgment is annexed hereto as Exhibit B and is incorporated herein by reference. Schultz agrees to pay Plaintiffs this amount in accordance with the terms and exceptions described in this Agreement, as well as an amount equal to the funds located or discovered after the date of this Agreement, if any, and any gain attributed to Schultz's investment of Plaintiffs' funds. If any loss to Plaintiffs is discovered and shown after the execution of this Agreement, Schultz will stipulate to an Amended Confession of Judgment to increase its face amount by the amount of the after-discovered loss. The Plaintiffs accept the property transferred pursuant to this Agreement as partial payment of the obligation under the Confession of Judgment. Upon completion of all transfers contemplated in this Agreement, Plaintiffs shall execute a "Partial Satisfaction of the Confession of Judgment" as set forth in Exhibit C of this Agreement, providing that Schultz has partially satisfied the obligation under the Confession of Judgment by the net of the proceeds of the transfers under the Agreement, less transfer costs.

Plaintiffs agree that if any documents are uncovered or revealed after the execution of this Agreement that show repayments made to Plaintiffs by Schultz, Plaintiffs shall notify Schultz and make copies of those documents available to Schultz for his review. Plaintiffs further agree to amend this Agreement and the Confession of Judgment to reflect any downward

adjustment in the total amount of wrongfully and fraudulently converted and embezzled monies revealed through those documents.

**B. Disclosed Assets**

Schultz represents and warrants that, as of the date of execution of this Agreement, those assets listed in Exhibit D, annexed hereto, constitute all known assets currently in his possession or name or under his control, either individually or jointly with another with the exception of Schultz's household items, as set forth in paragraph II.C.5. The parties agree that they are unaware of the existence of any other assets in Schultz's possession or name or under his control as of the execution of this Agreement.

The Schultz Family agrees that, as of the date of execution of this Agreement, those assets listed in Exhibit D, annexed hereto, constitute all assets known by them to be currently in Schultz's possession or name or under his control, either individually or jointly with another with the exception of Schultz's household items, as set forth in paragraph II.C.5. The Schultz Family agrees that as of the date of the execution of this Agreement, they know of no other of Plaintiffs' assets transferred by Schultz to any of them other than the assets expressly described herein. The Schultz Family, and each of them, represents that they neither knew of nor participated in any of Schultz's conduct, as alleged in the Complaint, at the time it occurred.

**C. Transfers and Retained Assets**

Schultz and the Schultz Family agree to transfer to Plaintiffs any and all rights, title and interest, including improvements to real property, in the assets listed in Exhibit D to this Agreement, except as set forth in paragraphs II.C.1-6 and the instructions therein. Transfers of real property shall include future governmental payments related to agricultural land. Schultz

represents that the assets transferred are free and clear of all liens and encumbrances with the exception of the line of credit associated with the Embroidery Studio and the Fine Grind, the encumbrance upon Parcel No. R73000990528000, and the CRP land as set forth in II.C.4.h.

To the extent any asset transferred pursuant to this agreement here and in the future is subject to any lien, mortgage, or other encumbrance, that asset will be liquidated or sold, and the value of the asset for purposes of repayment of the amount Schultz owes to Plaintiffs will be determined by that asset's value after the deduction of any such lien, mortgage, or other encumbrance.

Schultz agrees that the balances provided for all accounts listed in Exhibit D to this Agreement are correct to the best of his knowledge, and that there have been no transfers into or out of these accounts after April 17, 2001.

The Parties recognize that the accounts listed in Exhibit D may have been transferred to different entities, or that the name or account numbers may have changed. To the extent that accounts that would otherwise be listed in Exhibit D are not so listed because the institution, name of the account, or account numbers have changed, the parties agree that such other accounts are included in Exhibit D.

To the extent that Schultz or the Schultz Family are allowed to keep any asset, Plaintiffs will not seek the attachment of or rights to that asset unless they elect to nullify the Agreement pursuant to paragraph H. The following assets listed within Exhibit D will be retained or transferred according to the following instructions as set forth in paragraphs II.C.1-6.:

1. F&M State Bank Savings and Checking Accounts. Schultz, Barbara, Lance, Kirstin, and Drew Schultz shall retain all funds within the following F&M

State Bank of New York Mills bank accounts as of the execution date of this Agreement:

a. Account No. 669-2 (Gary and Barbara Schultz)

b. Account No. 95047-7 (Gary and Barbara Schultz)

c. Account No. 904466 (Barbara Schultz)

d. Account No. 73312 (Kirstin Schultz Savings Account, held in the name of Kirstin and Gary Schultz)

e. Account No. 903-5 (Kirstin Schultz Checking Account)

f. Account No. 82685 (Lance Schultz Savings Account)

g. Account No. 82610 (Lance Schultz Savings Account)

h. Account No. 14126 (Lance Schultz Savings Account)

i. Account No. 75317 (Drew Savings Account)

2. Retirement Accounts. Schultz and Barbara shall retain the funds within the following retirement accounts:

a. F&M State Bank Account No. 901439 (Gary Schultz IRA)

b. Lincoln Financial Group, Account No. 96-9092849 (Barbara's Individual Retirement Account)

c. Dain Rauscher Retirement Account No. 1101-7220-2184 (Gary Schultz)

d. At the direction of Plaintiffs, Schultz will liquidate his 401(k) account at Lund, known as Mass Mutual Retirement Account No. 9500-1-1-6, and pay the entire amount, less $10,000 which Schultz shall retain, to Plaintiffs. The amount liquidated and transferred to

Plaintiffs shall be used to satisfy any penalties or state, federal, or local income taxes due to the liquidation, with the exception of the $10,000 retained by Schultz, of which any penalties and state, federal, or local taxes shall be his responsibility and be paid by him.

3. Automobiles. Schultz shall retain possession and title to the following:

a. 1999 Chevrolet Suburban K15, S2, VIN No. 1GNFK16R8XJ54498

b. 1997 Oldsmobile Bravada, 4DR Wagon, VIN No. 1GHDT13W8V2713944, for which title shall be transferred to Kirstin Schultz.

4. Real Property and All Improvements Thereon

a. The following parcels shall constitute the "Homestead Exemption" as allowed under Minn. Stat. § 510.02, to which Schultz shall retain all right, title, interest and possession up to a value of $200,000:

i. R52000230156001

ii. R52000230156004

iii. R52000240173002

iv. R52000230158000 (Eastern 10 acres only)

v. R52000230168000 (Northeastern 62.5 acres only)

b. Schultz shall retain his undivided joint tenancy with right of survivorship interest in Parcel No. R53000110065000.

c. At the discretion and direction of Plaintiffs, the building and land of Parcel No. R73000990528000, subject to the loan amount of approximately $133,819.75, shall be transferred to Plaintiffs or a third party and sold. In the event the value received for said parcel is greater than the loan amount, that

value will be retained by Plaintiffs and Schultz's repayment amount will be reduced by such value.

d. Barbara shall use her best efforts to sell a portion of Parcel No. R33000080047000 within 120 days of the execution of this Agreement, of which no less than $65,000 of the proceeds shall be transferred to Plaintiffs, along with proof of documentation of the sale. If the parcel is not sold within 120 days of the execution of this agreement, Barbara shall execute a warranty deed to Plaintiffs.

e. With regards to the Embroidery Studio, Inc., and the Fine Grind, Barbara and Schultz shall:

i. Vacate the land, buildings, or structures in which the Embroidery Studio, Inc. and the Fine Grind currently reside within 60 days of the execution of this Agreement;

ii. Terminate all employees within 60 days from the execution of this Agreement;

iii. Transfer any and all assets in possession of or owned by the Embroidery Studio, Inc., and the Fine Grind, including, but not limited to, the land, building, fixtures, equipment, inventory, receivables, trade names, and other assets, to Plaintiffs or a third-party to be determined by Plaintiffs. Plaintiffs shall assume no liabilities of the Embroidery Studio, Inc. or the Fine Grind, including, but not limited to, any of those related to its line of credit; and

iv. Agree never to use the names, marks, brands, trade names, or likenesses, that are in any way related to the businesses known as the "Embroidery Studio" and the "Fine Grind."

f. With regards to the following property, Plaintiffs may, at their discretion, allow the following third-parties to purchase said property on a one-time basis for the fair market value of the property as determined by an uninterested offer, an appraiser, or any other method at the discretion of Plaintiffs. Should the third-party named below be unable or unwilling to purchase the property for said amount within 30 days of notice of such fair market value by Plaintiffs, Plaintiffs may, at their discretion, sell or transfer the property to any other third-party, person, or entity.

i. Plaintiffs may, at their discretion, sell or transfer R52000990397000, R52000990398000, and R520000090041009, which constitute the cabin property located at 44857 Nitche Lake Road, Perham, MN, to Chris Roberts.

ii. Plaintiffs may, at their discretion, sell or transfer parcel 52000240179000 to Michael Hopler.

iii. Plaintiffs may, at their discretion, sell or transfer the Eastern 30 acres of parcel 52000230158000 not retained by Schultz to Lawrence Dykoff.

iv. Plaintiffs may, at their discretion, sell or transfer parcel 52000230155001 to Edward Breitenfeldt.

v. Plaintiffs may, at their discretion, sell or transfer the 57.5 acres of parcel 52000230168000 not retained by Schultz to Michael Hopler.

g. CRP: Property listed below which is subject to CRP shall not be transferred, sold, or otherwise disposed of by Plaintiffs

without an agreement that (a) the land be maintained in CRP until such time it is scheduled to leave the program; or (b) that a party other than Schultz shall incur all costs and penalties for taking the land out of CRP.

| Parcel Number | Acres in CRP | Annual Payment | Year Entered Program |
|---|---|---|---|
| R52000240179000 | 72.8 | $2,038 | 1998 |
| R52000230155001 | 28.0 | $905 | 1998 |
| R52000230168000 | 66.5 | $1,826 | 1999 and 2000 (acreage enrolled in two separate contracts) |

5. Household Items. Shultz shall retain all clothing, furniture and personal items in his possession in his household. Schultz and Barbara represent that as of the execution of this Agreement they neither have possession of nor have transferred any said individual items exceeding $2500 in value.

6. Life Insurance. Schultz shall retain all rights in the following life insurance policies held through the Aid Association of Lutherans:

a. Certificate No. 6986795

b. Certificate No. 6423345

c. Certificate No. 622536

**D. Execution of the Agreement**

Schultz and the Schultz Family agree to use their best efforts to effect the transfer of all property pursuant to this Agreement, and in accordance with instructions from Plaintiffs, which are in accordance with this Agreement, after the execution of the Agreement. The Agreement will be executed as follows:

1. This Agreement will be filed with the Court.

2. Plaintiffs and Schultz shall execute stipulations drafted by Plaintiffs, an example of which is attached hereto as Exhibit E, concerning various properties that order (a) a vacation of the attachment, if necessary; and (b) the contemporaneous transfer of property to Plaintiffs, if required by this Agreement. These stipulations will include, but are not limited to, the following provisions for the transfer of the properties to Plaintiffs or their retention by Schultz:

a. Vacation of attachment Order as to all property retained by Schultz.

b. Equities transferred pursuant to this Agreement shall be liquidated and the cash shall be transferred to Plaintiffs. At Plaintiffs sole discretion, all bonds transferred pursuant to this Agreement shall not be liquidated but transferred in their current form.

c. Schultz will execute warranty deeds to all land transferred as per this Agreement, as directed by Plaintiffs.

d. Schultz will retitle all titled property transferred as per this Agreement in the name of Plaintiffs.

3. Nothing in paragraph D limits Plaintiffs' right to direct the transfer of properties as they see fit pursuant to this Agreement.

E. **Limited Exemption**

Schultz's and the Schultz Family's assets considered exempt or retained by Schultz or the Schultz Family pursuant to this Agreement are exempt only for purposes of settlement with Plaintiffs. The parties and the Schultz Family understand and agree that these exemptions are

not binding on the United States or law enforcement authorities officials for purposes of any criminal or civil forfeiture proceedings against Schultz or the Schultz family.

**F. Future Payment**

Beginning with the January 1, 2002, tax year, Schultz agrees to pay to Plaintiffs that portion of the Confession of Judgment not satisfied by the transfers contemplated in paragraph II.C. Schultz waives any and all defenses to this obligation, including those based on the statute of limitations. Schultz's future payment obligations shall be subject to the following limitations:

1. Schultz will make payments to Plaintiffs in a given year only if and when Schultz's and Barbara's combined annual adjusted gross income (as defined by the Internal Revenue Service), exceeds that of the annual Federal Poverty Tax Limit (FPL) Guidelines for a family of three (Gary, Barbara and minor son Drew) for that year. The exemption will be adjusted on an annual basis to reflect changes to the FPL Guidelines and to the family makeup, as appropriate. Schultz and Barbara will be allowed to include their son Drew in this exemption for so long as Schultz or Barbara, either individually or jointly, claim Drew as a dependent. Any gain resulting from the conversion of assets under this Agreement shall not be treated as income for purposes of determining any future payments.

   a. Reference to the combined annual adjusted gross income of Schultz and Barbara in this Agreement is strictly limited to the purpose of determining Schultz's future payment responsibilities. Plaintiffs acknowledge that Barbara is not in any way responsible, either individually or jointly, for satisfaction of Schultz's debt to

the Plaintiffs, as set forth in paragraph II.A., except as specifically set forth in this Agreement.

2. Once the threshold under paragraph II.F.1. has been met, Schultz will pay to Plaintiffs a specified percentage of his individual adjusted gross income, excluding current federal, state, and local tax obligations, for that year, and not including taxes from a previous year or any penalties, once Schultz's and Barbara's combined adjusted gross income reaches the following levels above the FPL threshold, until such time as Schultz's repayment obligations under paragraph II.A. are satisfied:

| **Schultz's and Barbara's Combined Annual Adjusted Gross Income Over Paragraph II.F.1. Threshold** | **Percentage of Schultz's Individual Adjusted Gross Income, Minus Current State and Federal Income Taxes for that Year, Payable to Plaintiffs** |
|---|---|
| $0 to $50,000 | 40% |
| $50,001 to $100,000 | 60% |
| $100,001 and above | 90% |

3. Schultz shall supply to Plaintiffs an annual report, beginning with the 2002 tax year, regarding his and Barbara's financial status and the status of any business Schultz and Barbara start, own, or in which they own an interest. This report shall include a financial statement, a complete list of assets, and copies of all federal, state or foreign income tax returns that Schultz and Barbara filed, either jointly or individually, for the preceding year. The income tax returns shall be prepared by an accountant or other third party and shall include a certification signed by the same stating that Schultz's and Barbara's tax returns are true and accurate to the best of his or her knowledge. Plaintiffs will keep this financial report confidential and will not

disclose it to third-parties (other than federal and state law enforcement and prosecutors, legal counsel, insurers, or financial advisors) except as required by law or with advanced written consent of the parties. This report shall be due to Plaintiffs no later than May 1 of each year and shall be sent to the following:

**Genmar Holdings Inc.**
**Attn: General Counsel**
**80 South 8th Street**
**Suite 2900**
**Minneapolis, MN 55402**

This requirement will cease when all repayment obligations under paragraph II.A. have been satisfied.

4. Divorce

a. In the event of divorce, Plaintiffs and Schultz agree that Schultz will make payments to Plaintiffs in a given year only if and when Schultz's annual adjusted gross income (as defined by the Internal Revenue Service), minus applicable current state and federal income taxes for that year, and not including taxes from a previous year or any penalties, exceeds that of the annual Federal Poverty Limit (FPL) Guidelines for a single person for that year. The exemption will be adjusted on an annual basis to reflect changes to the FPL Guidelines. Schultz will be allowed to include their son Drew in this exemption only if he claims him as a dependent.

b. If Schultz and Barbara divorce and Plaintiffs establish that the divorce was for the purpose of evading the provisions of this

Agreement, the provisions in paragraphs II.F.1-3. shall continue to apply.

5. Plaintiffs shall provide to Schultz an "Executed Partial Satisfaction of the Confession of Judgment" on an annual basis. This document shall reflect the net payments or asset transfers, less transfer costs, if any, made by Schultz to the Plaintiffs in the prior year. Plaintiffs shall provide this document to Schultz no later than June 1 each year by delivering a copy to the address as provided in Schultz's financial documents, provided to Plaintiffs pursuant to paragraph II.F.3. of this Agreement.

**G. Rights to Future Assets**

In order to satisfy the Confession of Judgment, Plaintiffs shall have the right to any and all assets owned or controlled by Schultz or the Schultz Family that are discovered after execution of this Agreement which consist of or are related to monies wrongfully and fraudulently converted and embezzled by Schultz that are not among the list of disclosed assets in Exhibit D. Plaintiffs, the Schultz Family, and Schultz are not currently aware of any such assets.

**H. Covenant Not to Sue Schultz and the Schultz Family**

In consideration of this Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby expressly acknowledged, Plaintiffs do for themselves, and all and each of their respective officers, directors, trustees, employees, agents and successors, covenant not to sue Schultz, his heirs and assigns, for any and all actions, causes of action, liabilities, suits, claims and demands whatsoever, state or federal, in law or in equity, which they

asserted or could have asserted in the Action, including any claim for attorneys' fees, except as specifically set forth in this Agreement.

In consideration of this Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby expressly acknowledged, Plaintiffs do for themselves, and all and each of their respective officers, directors, trustees, employees, agents and successors, covenant not to sue Barbara, Lance A., Kirstin N., and Drew Collin Schultz, their heirs and assigns, for any and all actions, causes of action, liabilities, suits, claims and demands whatsoever, state or federal, in law or in equity, which they asserted or could have asserted in the Action, including any claim for attorneys' fees, except as specifically set forth in this Agreement.

Plaintiffs shall have the option to terminate and nullify this Agreement, and proceed against Schultz for any and all claims they choose to pursue if, after the execution of this Agreement, a material falsehood in Schultz's interviews with Plaintiffs is discovered. The option to terminate shall be available only if the material falsehood results in discovery of either an additional loss of $5000 or more to Plaintiffs involving the same conduct that has already been identified, or shows additional misconduct or wrongdoing not currently known that results in loss to the Plaintiffs. In addition, the option to terminate shall be available only if Chairman Irwin Jacobs, Senior Vice President and General Counsel Mary McConnell, Chief Financial Officer and Executive Vice President Roger R. Cloutier II, Investigators James Molnar and Dennis Sackreiter, and counsel, Janice Symchych, were unaware of the material falsehood at the execution of this Agreement. If Plaintiffs invoke their right to terminate, Schultz hereby waives any defense to Plaintiffs' claims based on statutes of limitations or timeliness.

This transfer of assets by Schultz and the Schultz Family is not intended as full compensation or full satisfaction for damages claimed by Plaintiffs. Plaintiffs and Schultz understand that this is not an Agreement to dismiss or to not bring any action against any other potential defendant, known or unknown. This Agreement does not release any claim or cause of action by Plaintiffs against other potential defendants, known or unknown, for damages sustained as a result of their actions or inactions in connection with Schultz's wrongful conduct toward Plaintiffs. These claims and causes of action are specifically reserved and retained against these known or unknown other potential defendants.

**I. Stipulation of Dismissal**

Plaintiffs agree to dismiss the Action against Schultz without prejudice upon the final vacation of the attachment order and transfer of all assets and property contemplated by this agreement, using the "Stipulation of Dismissal without Prejudice" annexed hereto as Exhibit F.

**J. Amendments to Agreement**

Plaintiffs, at their complete discretion, may allow this Agreement to be modified, amended, waived, or revoked only in writing, signed by all parties and the Schultz Family. Schultz may request an amendment to the time limits provided in paragraph II.C.4. by a letter request to Plaintiffs and proof of good faith as determined by Plaintiffs that he has attempted to sell the real property listed in paragraph II.C.4. Such amendment will only be granted as Plaintiffs allow, at their complete discretion.

**K. Authority**

Each party and the Schultz Family hereto represents and warrants that he, she, or it has full authority to enter into this Agreement. This Agreement is the result of arms-length

negotiations between the Plaintiffs and Schultz and the Schultz Family. All parties and the Schultz Family have participated in the negotiations, have had an equal opportunity to participate in the drafting and revision of this Agreement, and have had the opportunity to review this Agreement with their counsel. No ambiguity shall be construed against any party or the Schultz Family based upon a claim that the party or the Schultz Family drafted the language in question.

**L. Parties Represented**

Each of the parties and the Schultz Family acknowledges and represents that he, she, or it has been represented by counsel in connection with the negotiation and execution of this Agreement. Each party and the Schultz Family further represents that, in executing this Agreement, he, she, or it has relied solely upon his, her, or its own judgment, belief and knowledge, and the advice and recommendations of his, her or its own independently selected counsel, concerning the nature, extent and duration of his, her, or its rights and claims, and that he, she, or it has not been influenced to any extent whatsoever in executing this document, or the exhibits hereto, by any representations or statements except those expressly contained or referred to herein.

**M. Agreement as Entire Agreement**

This Agreement constitutes the entire agreement of the parties and the Schultz Family with respect to its subject matter, and all agreements and understandings among the parties and the Schultz Family with respect to its subject matter are embodied and expressed herein. It is understood and agreed that the terms and conditions described in this Agreement constitute the essential terms and conditions between Plaintiffs and Schultz and the Schultz Family, all of which have been voluntarily agreed upon.

**N. <u>Obligations Non-dischargeable Due to Bankruptcy</u>**

The conduct of Schultz referred to above was "willful and malicious" as those terms are used in 11 U.S.C. § 523(a), and the obligations of Schultz to Plaintiffs under the Agreement or otherwise, including the Confession of Judgment, are neither dischargeable nor subject to reorganization in a subsequent bankruptcy, including proceedings in Chapter 13.

**O. Execution by Identical Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement and all other documents to be executed in connection herewith are hereby authorized to be executed and accepted by facsimile signatures and such facsimile signatures shall be considered valid and binding as original signatures and may be relied upon by the parties hereto, although the parties will also execute an identical original Agreement and all other documents in connection herewith after this Agreement has been executed and accepted by facsimile signatures.

**P. Governing Law**

This Agreement shall be interpreted and enforced according to the laws of the State of Minnesota.

**Q. Statement of Cooperation**

Plaintiffs agree that Schultz has assisted in the expedited resolution of Plaintiffs' claims by submitting to interviews by Plaintiffs on the subjects of his wrongdoing and identity and location of his assets, and by engaging in a process of informal mutual discovery without court intervention. Plaintiffs are prepared to describe and acknowledge this in any criminal sentencing proceeding related to this matter.

**R. Taxes**

The Plaintiffs, Schultz, and the Schultz Family agree that Plaintiffs will not be responsible for any taxes incurred on any property or funds or income derived from such property or funds transferred due to the Agreement, and that any taxes, penalties, or fines

assessed by the state or federal government, including, but not limited to, any taxes, penalties, or fines assessed as a result of the transfer or liquidation of retirement funds, assessed against Schultz or any member of the Schultz family shall be borne by Schultz or the member of the Schultz family, with the exception of the CRP land, as set forth and subject to the limitations in II.C.4.h., and with the exception of the provisions regarding Schultz's 401(k) account, as provided for in II.C.2.d.

**S. <u>Parties to Bear Own Costs and Fees</u>**

The Plaintiffs, Schultz, and the Schultz Family shall bear their own costs, attorneys' fees and expenses in connection with this Agreement and with the Action.

**T. <u>Subrogation Rights</u>**

To the extent of the actual payment made to Plaintiffs under Plaintiffs' Crimeguard policy, this Agreement does not exempt the subrogation rights of the insurer should its policy provide coverage for the losses sustained by the Plaintiffs. To the extent coverage and payment is afforded under the Plaintiffs' Crimeguard policy in effect at the time the losses were discovered, Plaintiffs' rights of recovery under this Agreement shall be subrogated and/or assigned to the insurer, to the full extent of its total payment under the policy.

**U. <u>Invalidity</u>**

In case any one or more of the provisions of this Agreement is determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions of this Agreement will not in any way be affected or impaired by such determination.

**V. <u>Further Assurances</u>**

Schultz and the Schultz Family agree that they will sign and execute all papers and documents necessary to effectuate this Agreement and the terms thereof and will use their best efforts to effect the transfer of all property pursuant to this Agreement, and in accordance with instructions from Plaintiffs. Schultz also agrees that he will provide his tax returns for 2000 and 2001 upon filing, as well as any other tax returns in his possession and control.

**GENMAR HOLDINGS, INC.**

Dated: January 22, 2002

By: ______________________

Its: EVP & CFO

**GENMAR INDUSTRIES, INC.**

Dated: January 22, 2002

By: ______________________

Its: VP

**LUND BOATS,**
**A DIVISION OF GENMAR INDUSTRIES, INC.**

Dated: January 22, 2002

By: ______________________

Its: VP

**GARY DUANE SCHULTZ**

Dated: January 10, 2002

______________________
Gary Duane Schultz

**THE SCHULTZ FAMILY**

Dated: January 10, 2002

______________________
Barbara A. Schultz

Dated: January 10, 2002

______________________
Lance A. Schultz

Dated: January 16, 2002

______________________
Kirstin N. Schultz

Dated: January 10, 2002

Drew Schultz
Drew Collin Schultz

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Genmar Holdings, Inc.,<br>Genmar Industries, Inc., an Indirect Subsidiary of Genmar Holdings, Inc.,<br>and<br>Lund Boats,<br>a Division of Genmar Industries, Inc.,<br><br>Plaintiffs,<br>vs.<br><br>Gary Duane Schultz,<br><br>Defendant. | Civil File No. 01-CV-639 JRT/RLE<br><br>**STIPULATION AND ORDER VACATING ORDER FOR ATTACHMENT AND DIRECTING TRANSFER OF REAL PROPERTY** |

**IT IS HEREBY STIPULATED** by and between Plaintiffs Genmar Holdings, Inc., Genmar Industries, Inc. and Lund Boats and Defendant Gary Duane Schultz, by and through their respective attorneys, that Schultz will execute warranty deeds to Plaintiffs, at the direction of Plaintiffs, for the following parcels of land:

| | | |
|---|---|---|
| 1. | Land | R52000230158000 (everything but Eastern 10 acres) |
| 2. | Land | R52000230168000 (everything but Northeastern 62.5 acres) |
| 3. | Land | R52000240179000 |
| 4. | Land | R52000990397000 |
| 5. | Land | R52000990398000 |
| 6. | Building and land | R73000080028002 |
| 7. | Land | R52000090041009 |
| 8. | Land | R52000230155001 |
| 9. | Building and land | R73000990528000 |

Plaintiffs and Defendant further agree that upon Schultz's execution of the Warranty Deeds, and the completion of all necessary matters to transfer the property, that the April 17,

**EXHIBIT E**

2001 Order for Attachment concerning the following real property is vacated, and that Plaintiffs will serve this Order upon Otter Tail County when the warranty deeds have been executed to its satisfaction:

| | | |
|---|---|---|
| 1. | Land | R52000230158000 |
| 2. | Land | R52000230156001 |
| 3. | Land | R52000230168000 |
| 4. | Land | R52000240179000 |
| 5. | Building and land | R52000990397000 |
| 6. | Land | R52000990398000 |
| 7. | Land (joint tenancy) | R53000110065000 |
| 8. | Land | R33000080047000 |
| 9. | Building and land | R73000080028002 |
| 10. | Land | R52000230156004 |
| 11. | Land | R52000090041009 |
| 12. | Land | R52000230155001 |
| 13. | Building and land | R73000990528000 |
| 14. | Land | R52000240173002 |

Dated: _____________, 2002

DORSEY & WHITNEY LLP

By___________________________

Janice M. Symchych (#10811X)
Mitchell W. Granberg (#0285687)
220 South Sixth Street
Minneapolis, MN 55402-1498
(612) 340-2600

Attorneys for Plaintiffs Genmar Holdings, Inc., Genmar Industries, Inc., an Indirect Subsidiary of Genmar Holdings, Inc., and Lund Boats, a Division of Genmar Industries, Inc.

Dated: ____________, 2002

GREENE ESPEL, P.L.L.P.

By_____________________________

Andrew M. Luger (#189261)
William P. Hefner (#258349)
333 South 7th Street, Suite 1700
Minneapolis, MN 55402

Attorneys for Defendant
Gary Duane Schultz

Pursuant to the Stipulation of the parties, **IT IS HEREBY ORDERED**:

1. Defendant will execute warranty deeds in favor of Plaintiffs for the real property listed above.

2. The attachment order for the April 17, 2001, Order for Attachment is vacated for the real property listed above upon service of this Order. This Order will be served upon Otter Tail County by Plaintiffs.

Dated: ____________________

_______________________________
John R. Tunheim
Judge of United States District Court
For the District of Minnesota

880698

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Genmar Holdings, Inc.,<br>Genmar Industries, Inc., an Indirect Subsidiary of Genmar Holdings, Inc.,<br>and<br>Lund Boats,<br>a Division of Genmar Industries, Inc.,<br><br>Plaintiffs,<br>vs.<br><br>Gary Duane Schultz,<br><br>Defendant. | ) | Civil File No. 01-CV-639 JRT/RLE<br><br>**ORDER FOR ATTACHMENT** |

Based upon the affidavits, memorandums, arguments of counsel, and proceedings herein, this Court rules as follows:

## FINDINGS OF FACT

1. The Parties stipulate and agree that Defendant did not contest the entry of an attachment order as reflected herein.

2. Plaintiffs have demonstrated a probability of success on the merits.

3. Plaintiffs have demonstrated facts that show the existence of grounds for an attachment under Minn. Stat. § 570.02, subd. 1(1), (3), and (4).

**EXHIBIT B**

A true copy in 2 sheet(s) of the record in my custody.
CERTIFIED 4/30 2001
Francis E. Dosal, Clerk
BY: Deputy Clerk

**EXHIBIT A**

(01)

FILED APR 17 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

4. The Parties stipulate and agree that no further hearing before Judge Tunheim is required pursuant to Minn. Stat. § 570.025 and § 570.026, and that this Order shall continue until final judgment is entered in this matter, unless Plaintiffs wish to add additional assets to the terms of the Order, in which case the Parties shall attempt first to reach stipulation and agreement before proceeding to hearing.

**NOW, THEREFORE, IT IS HEREBY ORDERED**

1. Defendant Schultz may not transfer, sell, or otherwise dispose of personal and real property, a list of which is attached as Exhibit B and C to this Order.

2. Upon receipt of a copy of this Order, any institution into which funds belonging to Plaintiffs have been transferred into accounts at the institution are hereby directed to freeze all funds in said accounts until further notice from this Court; a copy of these institutions and accounts is attached as Exhibit A. Plaintiffs are directed to serve copies of the Order on these institutions.

3. In lieu of freezing Farmers & Merchants State Bank of New York Mills ("F&M Bank") account # 15727 and loan/line of credit # 16358, Plaintiffs will designate a qualified CPA who shall have authority to monitor those accounts to ensure that they are used only for legitimate business reasons and that Plaintiffs' funds do not make their way into such accounts. The designated CPA shall promptly identify and inform Plaintiffs of any such suspected funds that are currently in such accounts or that make their way into such accounts.

4. In lieu of freezing Farmers & Merchants State Bank of New York Mills (F&M Bank) savings account # 73312 and checking account # 903-5, Plaintiffs will designate a qualified CPA who shall have authority to monitor those accounts to ensure that they are used only for legitimate reasons and that Plaintiffs' funds do not make their way into such accounts. The designated CPA shall promptly identify and inform Plaintiffs of any such suspected funds that are currently in such accounts or that make their way into such accounts.

5. Plaintiffs are granted leave to take the deposition of Defendant Gary Duane Schultz for the purpose of identifying any and all assets he may have.

6. Plaintiffs will post an attachment bond in the amount of $50,000, or deposit cash, a letter of credit, a cashiers check, or a certified check with the Court for the same amount upon filing of this order.

7. Defendant may post a bond in the amount of $12 million in lieu of attachment of his property.

8. This Order shall continue until final judgment is entered in this matter.

Dated: April 17, 2001

James Rosenbaum
Judge of United States District Court
for the District of Minnesota

# Gary Schultz Real Property

| TYPE | TAX ID NUMBER | OWNER | VALUE |
|---|---|---|---|
| Secondary Residence | | | 100,000.00 |
| Land | R52000230158000 | Gary & Barbara Schultz | 11,800.00 |
| Land | R52000230168000 | Gary & Barbara Schultz | 59,800.00 |
| Land | R52000240179000 | Gary & Barbara Schultz | 79,300.00 |
| Land | R52000990397000 | Gary & Barbara Schultz | 116,200.00 |
| Land | R52000990398000 | Gary & Barbara Schultz | 14,400.00 |
| Land | R53000110065000 | Gary & Barbara Schultz | 14,200.00 |
| Land | R33000080047000 | Gary & Barbara Schultz | 102,400.00 |
| Land | R73000080028002 | Gary & Barbara Schultz | 205,800.00 |
| Land | R52000230156004 | Gary & Barbara Schultz | 3,800.00 |
| Land | R52000090041009 | Gary & Barbara Schultz | 500.00 |
| Land | R52000230155001 | Gary & Barbara Schultz | 73,100.00 |
| Land | R73000990528000 | Gary & Barbara Schultz | 121,200.00 |
| Land | R52000240173002 | Gary & Barbara Schultz | 17,300.00 |

EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Genmar Holdings, Inc., Genmar Industries, Inc., an Indirect Subsidiary of Genmar Holdings, Inc., and Lund Boats, a Division of Genmar Industries, Inc., Plaintiffs, vs. Gary Duane Schultz, Defendant. | ) | Civil File No. 01-CV-639 JRT/RLE **SUPPLEMENTAL ORDER FOR ATTACHMENT** |

Based upon the April 17, 2001, Order of this Court and the Stipulated Application for Supplemental Attachment, this Court rules as follows:

**FINDINGS OF FACT**

1. The New York Mills police seized approximately ten-thousand dollars ($10,000) in cash from Defendant, and secured said cash in the East Otter Tail Credit Union, P.O. Box F, New York Mills, Minnesota 56557.

2. The Otter Tail County Attorney seized approximately eleven-thousand dollars ($11,000) from Defendant, and secured said cash with the Otter Tail County Treasurer, Courthouse, 121 West Junius, Fergus Falls, Minnesota 56537.

FILED APR 23 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(13)

3. Pursuant to the April 17, 2001, Order, Plaintiffs wish to add these assets of approximately twenty-one thousand dollars ($21,000), in cash to the terms of said Order; and

4. The Parties stipulate and agree to the addition of said assets to this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED**

1. Defendant Schultz may not transfer, use, dispose, or otherwise dissipate the approximately twenty-one thousand dollars ($21,000) of cash secured with the East Otter Tail Credit Union and the Otter Tail County Treasurer.

2. The approximately ten-thousand dollars ($10,000) in cash secured by the East Otter Tail Credit Union, P.O. Box F, New York Mills, Minnesota 56557, will be maintained and frozen by the East Otter Tail Credit Union until final judgment is entered in this matter.

3. The approximately eleven-thousand dollars ($11,000) in cash secured by the Otter Tail County Treasurer, Courthouse, 121 West Junius, Fergus Falls, Minnesota 56537 will be maintained and frozen by Otter Tail County Treasurer until final judgment is entered in this matter.

4. Upon receipt of a copy of this Order, the East Otter Tail Credit Union and the Otter Tail County Treasurer will freeze and maintain the above mentioned cash until further notice from this Court or at the stipulation and agreement between the Parties as to storage and security of the cash. Plaintiffs are directed to serve copies of the Order on these institutions.

5. Plaintiffs' attachment bond filed as a result of the April 17, 2001, Order will remain in effect for this Order.

6. Defendant may post a bond in the amount of the cash in lieu of attachment of this property.

7. This Order shall continue until final judgment is entered in this matter.

Dated: April 23rd, 2001

~~John R. Tunheim~~ James M. Rosenbaum
Judge of United States District Court
for the District of Minnesota

## REAL PROPERTY AND ALL IMPROVEMENTS THEREON

| Type | Tax I.D. Number | Owner | Value | Property transferred to Plaintiffs or retained by Schultz |
|---|---|---|---|---|
| 40 acres total; 10 acres are partially homesteaded land retained pursuant to Minn. Stat. § 510.02, otherwise the remaining 30 acres of agricultural land are transferred to Plaintiffs. | R52000230158000 | Gary and Barbara Schultz | $11,800.00 | 40 acres total; Eastern 10 acres retained by Schultz pursuant to Homestead Exemption, Minn. Stat. § 510.02; the remaining 30 acres will be transferred to Plaintiffs. |
| Homestead residence and adjoining property, the entirety of which is homesteaded and retained pursuant to Minn. Stat. § 510.02 | R52000230156001 | Gary and Barbara Schultz | $144,800.00 | Retained pursuant to Homestead Exemption, Minn. Stat. § 510.02. |
| 120 acres total; 62.5 acres are partially homesteaded land retained pursuant to Minn. Stat. § 510.02, otherwise the remaining 57.5 acres of agricultural land are transferred to Plaintiffs. This parcel is subject to CRP. | R52000230168000 | Gary and Barbara Schultz | $59,800.00 | 120 acres total; Northeastern 62.5 acres retained by Schultz pursuant to Homestead Exemption, Minn. Stat. § 510.02; the remaining 57.5 acres will be transferred to Plaintiffs. |
| Agricultural land, subject to CRP | R52000240179000 | Gary and Barbara Schultz | $79,300.00 | Transferred |
| Cabin and land | R52000990397000 | Gary and Barbara | $116,200.00 | Transferred |

| | | | | |
|---|---|---|---|---|
| | | Schultz | | |
| Cabin and land | R52000990398000 | Gary and Barbara Schultz | $14,400.00 | Transferred |
| Land inherited by Schultz and brother (joint tenancy) | R53000110065000 | Gary Schultz and brother | $14,200.00 (value of total parcel) | Retained |
| Land owned by Barbara and sisters | R33000080047000 | Gary and Barbara Schultz | $102,400.00 | Retained, but Barbara shall sell her share of Parcel No. R33000080047000 within 120 days of the execution of this Agreement, $65,000 of which shall be transferred to the Plaintiffs. |
| Land on which Embroidery Studio and Fine Grind are located and buildings or structures located thereon | R73000080028002 | Gary and Barbara Schultz | $205,800.00 | Transferred pursuant to II.C.4.e. |
| Homesteaded land retained pursuant to Minn. Stat. § 510.02 | R52000230156004 | Gary and Barbara Schultz | $3,800.00 | Retained pursuant to Homestead Exemption, Minn. Stat. § 510.02 |
| Cabin and land | R52000090041009 | Gary and Barbara Schultz | $500.00 | Transferred |
| Agricultural land, subject to CRP | R52000230155001 | Gary and Barbara Schultz | $73,100.00 | Transferred |
| Building (Chameleon Colors) and land | R73000990528000 | Gary and Barbara Schultz | $121,200.00 (Subject to loan in the amount of $133,819.75 with Farmers and Merchants State Bank of New York | Transferred pursuant to II.C.4.c. |

| | | | | |
|---|---|---|---|---|
| | | | Mills.) | |
| Homesteaded land retained pursuant to Minn. Stat. § 510.02 | R52000240173002 | Gary and Barbara Schultz | $17,300.00 | Retained pursuant to Homestead Exemption, Minn. Stat. § 510.02 |
| Two shares in apartment investment (Parkview Apartments) | | Gary and Barbara Schultz | $20,000.00 | Transferred |

**VEHICLES**

| Year | Make | Model | VIN | License Plate Number | Property transferred to Plaintiffs or retained by Schultz |
|---|---|---|---|---|---|
| 1993 | Chevrolet | GMT-400, Pickup | 26CEK19K6P 1243191 | EAX821 | Transferred |
| 1997 | Oldsmobile | Bravada, 4DR Wagon | 1GHDT13W8V2713944 | 904PCR | Retained |
| 1998 | Chevrolet | GMT-400, Club Cab, PU | 26CEK19R3W 1273938 | AWX646 | Transferred |
| 1999 | Chevrolet | K15, S2 | 1GNFK16R8XJ548498 | DME013 | Retained |
| 2000 | Jaguar | S-Type, 4DR Sedan | SAJDA01D3YGL49898 | EHF156 | Transferred |
| 2000 | Winnebago | Mobile home | 1FCNF53S0Y0A07119 | RVB0822 | Transferred |

**TRAILERS**
**(Each trailer listed below will be transferred to Plaintiffs)**

| Year | Make | Model | VIN | License Plate Number |
|---|---|---|---|---|
| 1995 | Floe | Trailer | 4L4T11015SM003091 | E13879 |
| 1996 | Sled | Trailer | 41KMN1812T201 1890 | C512734 |