UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

Genmar Holdings, Inc., et al.,

Plaintiffs,

v.

Gary Duane Schultz,

Defendant.

Case File No. 01-CV-639 (JRT/RLE)

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND FOR SANCTIONS**

## INTRODUCTION

Plaintiffs Genmar Holdings, Inc. and Genmar Industries, Inc. (collectively "Genmar") once again are forced to expend substantial expense and resources to bring another motion to compel Defendants Gary and Barbara Schultz to transfer real estate in lieu of payments to Genmar which the Schultzes agreed to do years ago in the Settlement Agreement dated January 10, 2002 and which this Court ordered to have been transferred some eight months ago.

By order dated August 28, 2003, this Court directed the Schultzes to "deliver an executed deed in the form of Exhibit A to this Order to Plaintiffs' counsel within five (5) business days of entry of this Order." (Aug. 28, 2003 Order at 1, attached to the Affidavit of Kevin M. Magnuson ("Magnuson Aff.") as Ex. A.) The Court subsequently asked Plaintiffs to wait 45 days to enforce the Order so that Barbara Schultz could secure financing for payment in lieu of transferring the property. That period expired on Monday, October 13, 2003. Despite repeated letters and calls since that date to Barbara Schultz and her attorney, and promises of compliance, the Schultzes have not complied with the Court's Order enforcing the settlement agreement.

Therefore, Plaintiffs are forced to return to the Court yet again to hereby request that the Schultzes be held in contempt of court for failing to comply with this Court's Order, and that the Court enter an order divesting the Schultzes of their title in the property and transfer the Schultzes' title in Genmar pursuant to Federal Rule of Civil Procedure 70. Plaintiffs also respectfully request that the Court grant them all fees and costs associated with their efforts to seek compliance with the Order.

**BACKGROUND**

Gary Schultz embezzled over $13.5 million from Defendants. The parties entered into a Settlement Agreement on January 10, 2002. Gary Schultz, Barbara Schultz and their children agreed to be bound by the terms of that agreement. (*See* Settlement Agreement, attached as Exhibit A to the Affidavit of James J. Long ("Long Aff.") dated February 26, 2003.) Each member of the Schultz family represented and warranted that he or she had full authority to enter into this Agreement. (*See id*. at ¶ K.) The Court retained jurisdiction to enforce the Settlement Agreement in a January 22, 2003 Order. (*See* Long Aff., Ex. C.)

In the Settlement Agreement, Barbara Schultz agreed to transfer the sum of $65,000 or real property to Genmar or in partial repayment of Schultz's debt to Genmar. Specifically, paragraph II.C.D.4.d of the Settlement Agreement requires the following:

> d. Barbara shall use her best efforts to sell a portion of Parcel No. R33000080047000 within 120 days of the execution of this Agreement, of which no less than $65,000 of the proceeds shall be transferred to Plaintiffs, along with proof of documentation of the sale. If the parcel is not sold within 120 days of the execution of this agreement, Barbara shall execute a warranty deed to Plaintiffs.

The real property in question is located at 53189 440th Street, New York Mills, Minnesota, 56567 (W/½SW¼, S½NW¼ 8-136-37) and consists of 160 acres of improved land.

The Court two years prior entered an Order for Attachment, dated April 17, 2001, a Supplemental Order of Attachment, dated April 23, 2001, (*see* Long Aff., Ex. B) and a judgment for $13,501,249.15 against Schultz on February 7, 2002. (*See* Magnuson Aff., Ex. B.) Exhibit D to the Supplemental Order of Attachment, states that the property in question is owned by "Barbara and her sisters." (*See* Exhibit D of the Supplemental Order of Attachment, Long Aff., Ex. B at 20.) A recent title commitment obtained by Genmar indicates that Barbara Schultz holds an undivided one-half interest as a tenant in common with her sister, Tammy Peters. (See Magnuson Aff., Ex. F.) Thus, Barbara has the authority to convey to Genmar (or other purchaser) her interest in the property, which would make Genmar and Peters tenants in common and likely result in the partition and sale of the property. The Supplemental Order of Attachment expressly states that the property is retained to allow Barbara Schultz to sell the land in order to divest any other interests and transfer to Genmar $65,000. (*See* Long Aff., Ex. B at 20.) That 120-day period passed over two years ago, on May 10, 2002, and Genmar received neither the $65,000 payment nor a valid warranty deed transferring title of the property to Genmar.

In an effort to obtain performance of paragraph II.C.4.d, Genmar had numerous communications with Barbara Schultz and/or Schultzes' counsel, Andrew Luger of Greene Espel, P.L.L.P., requesting payment or execution of the warranty deed. On or about October 8, 2002, counsel for Genmar contacted Mr. Luger, seeking compliance with the Settlement Agreement and requested execution of the warranty deed. On October 9, 2002, Mr. Luger responded with a request that, although the 120 day period was long past, Genmar allow Barbara Schultz to pay Genmar $65,000 in satisfaction of paragraph II.C.4.d, which Schultz would obtain through a $65,000 loan on the property. Genmar agreed that it would accept the $65,000 if Schultz paid within three weeks. A week later, Mr. Luger advised that Schultz was in the

process of obtaining the loan, which would not be a problem, but that it might take slightly more than three weeks. (*See* Long Aff. at ¶¶ 6-9.)

During this period of time in which Schultz was in material breach of the Settlement Agreement and Genmar sought compliance, CIT Group Equipment Financing Inc. on October 25, 2002 docketed a judgment against Schultz in the amount of $111,906.90 in the Otter Tail County district court. (*See* Magnuson Aff., Ex. F, Schedule B.) Under Minnesota law, this judgment became a lien against Schultz' interest in its property as of such date well over a year after this Court's Order of Attachment, which was filed against the property on May 2, 2001. (*See id.*)

In mid-November 2002, counsel for Genmar again contacted Mr. Luger to obtain payment. Lugar replied that prior to paying the amount owed, Barbara Schultz wanted to know the status of another unrelated parcel of property. Although Genmar's rights under paragraph II.C.4.D. of the Agreement are independent of that or any other issue, Genmar resolved the other property issue before again pressing for payment of the $65,000. In spite of the resolution of that unrelated property issue, Schultz still has not made the $65,000 payment or tendered to Genmar a warranty deed for the property. (*See id.* at ¶ 10.)

Counsel for Genmar again contacted Lugar in mid-January, 2003. Lugar informed Genmar that he no longer represented the Schultzes and that contact should be with Barbara Schultz directly. On January 21, 2003, Genmar wrote to Barbara Schultz to obtain performance of paragraph II.C.4.d. Schultz replied on January 26, 2003 that she had applied for Legal Services and would not respond to requests for compliance with the settlement until she was able to secure counsel. (*See* Long Aff., Ex. F.) Barbara Schultz never responded. Plaintiffs therefore sought an Order requiring Defendant to transfer to Genmar a warranty deed for said property

pursuant to the Settlement Agreement within five (5) business days of the entry of the Court's Order.

Pursuant to Plaintiffs' motion, this Court issued an Order Enforcing the Settlement Agreement on August 28, 2003, directing Defendant to deliver an executed warranty deed, which the Court attached as an exhibit, within five (5) business days of entry of the Order. (Magnuson Aff., Ex. A.) Shortly after issuing the Order, the Court received Schultzes' response to Plaintiffs' Motion to Enforce the Settlement Agreement, dated slightly before the Court's Order. (Magnuson Aff., ¶ 4.) The response requested 45 days in which to secure financing to tender payment to Genmar. The Court then orally requested that Genmar wait 45 days before seeking to compel Defendant to comply with the Order. (*Id.*) That period expired on October 13, 2003 and Defendant continues to ignore the Court's Order.

Counsel for Genmar continued to send letters to Schultz demanding compliance with the Order enforcing the Settlement Agreement. (*See* Oct. 29, 2003 Letter, Magnuson Aff., Ex. C.) In February, 2004, Genmar's counsel telephoned Barbara Schultz and left messages on her answering machine informing her that Genmar had received no response to its demand that she comply with the Order enforcing the Settlement Agreement and that it was about to file a motion for contempt of court. (Magnuson Aff., ¶ 6.) After receiving no response to the telephone calls, counsel then contacted attorney Brenda Velde of the Velde Law Firm, Ltd. in Alexandria, Minnesota, who had previously represented Barbara Schultz. Velde informed Genmar's counsel that she was not currently representing Schultz but that she would relay a message to her encouraging her to comply with the Court's orders. (*See id.,* ¶ 7.) In a subsequent conversation, Velde, now apparently representing Schultz, stated that Barbara Schultz had agreed to return the completed warranty deed to Genmar. (*Id.*, ¶ 8.) However, in March, 2004 counsel for Genmar

received a copy of the warranty deed bearing only the unnotarized signature of Barbara Schultz. (*See id.*, Ex. D.) Counsel again telephoned Velde to notify her that the unnotarized warranty deed was invalid and unsatisfactory. (*See id.*, ¶ 9.) Velde confirmed in a letter dated May 7, 2004 that she would advise her client of the insufficiency of the warranty deed. (*See id.*, Ex. E.) To date, Schultz has not returned a fully executed warranty deed to Genmar. (*Id.*, ¶ 9.)

In preparation for filing this motion for contempt of court, Genmar's counsel on June 4 and June 7, 2004 again contacted Velde to inform her that Genmar was left with no choice but to once again move the Court to enforce the Settlement Agreement—this time by seeking an order holding Schultz in contempt of court and transferring title of the real estate to Genmar. (*See* Magnuson Aff., ¶ 10.) Schultz has not indicated individually or through counsel whether she will respond. Genmar has gone to extreme lengths to allow Schultz to fulfill her obligations under the Settlement Agreement. Although the 120-day period in which Schultz was to tender payment to Genmar ended on May 10, 2002, Genmar engaged Schultz and numerous counsel in time-consuming and costly discussions directed toward facilitating Schultz's performance under the Settlement Agreement. Only after having these efforts prove fruitless did Genmar bring its initial motion to enforce the agreement and now return to bring this motion for contempt sanctions and specific performance by court order. Genmar respectfully submits that it has done everything possible to avoid moving this Court for relief, and it now has no other choice but to bring this motion.

## ARGUMENT

This Court initially entered judgment pursuant to the terms of the Settlement Agreement and Executed Confession of Judgment. It expressly retained jurisdiction for the purpose of enforcing the Settlement Agreement in the Court's January 22, 2003 Order. Hence, the Court, in

its August 29, 2003 Order enforcing the Settlement Agreement, found that jurisdiction over efforts to compel compliance with the settlement Agreement continues to exist. The Court thus has jurisdiction now to sanction Barbara and Gary Schultz pursuant to Rule 70.

Courts "analyze settlement agreements according to general contract law principles." *Cody v. Hillard*, 304 F.3d 767, 778 (8th Cir. 2002) (citing *Gilbert v. Monsanto Co.*, 216 F.3d 695, 700 (8th Cir. 2000)). Barbara Schultz and the rest of the Schultz family entered into and signed the Settlement Agreement, agreeing to be bound by the terms set forth therein: "All terms and conditions of this Agreement are effective by execution by all the parties and the Schultz family." (Settlement Agreement, Long Aff., Ex. A, at 1.) The Agreement also provides that "[e]ach party and the Schultz Family hereto represents and warrants that he, she, or it has full authority to enter into this Agreement." (*Id.* at ¶ K.) Barbara Schultz expressly agreed to pay Genmar $65,000 within 120 days of the Agreement or transfer to Genmar all rights, title and interest in the property that is the subject of this motion. (*Id*. at 5.) In return for this and other terms, Genmar agreed to dismiss its civil action against Schultz. (*Id.* at ¶ I.)

Barbara Schultz has no legal excuse for ignoring her obligations under the Settlement Agreement. She has a clear ownership interest in the property in question and warranted that she had the authority to transfer the property to Genmar should she be unable to raise the agreed upon payment. Rather than fulfill her settlement obligations and comply with court orders, she dares this Court to force her compliance.

It is axiomatic that a district court has jurisdiction to enforce its own order. *See Taylor v. Finch*, 423 F.2d 1277, 1279 (8th Cir.) ("Courts have power to adjudge persons who willfully disobey their orders to be in contempt and such power extends to both civil and criminal contempt.") (citing Fed. R. Civ. P. 70; *United States v. United Mine Workers*, 330 U.S. 258, 302-

303 (1947); other citations omitted), *cert. denied,* 400 U.S. 881 (1970). Pursuant to Rule 70, this Court has the power to adjudge a party in contempt and to order sanctions for failure to comply with the court order. *See* Fed. R. Civ. P. 70; *see also Gilbert v. Johnson*, 490 F.2d 827, 830 (5th Cir. 1974).

**I. Court Order Vesting Title in Genmar.**

When a judgment directs a party to perform a specific act and that party fails to comply within the time specified, the Court has several alternatives. The relevant actions include: (1) the Court may adjudge the disobedient party in contempt and (2) the Court, in lieu of directing conveyance of real property located within the district, may enter judgment divesting title of the disobedient party and vest it in others. Fed. R. Civ. P. 70; *see also Office of Thrift Supervision v. Hooper*, 858 F. Supp. 67, 69 (W.D.Va. 1994); *Buzzel v. Edward H. Everett Co*., 180 F.Supp. 893, 903 (D. Vt. 1960); *In re Waltham Watch Co*., 92 F.Supp. 871, 873 (D. Mass. 1950); *Mortgagelinq Corp. v. Gottfried*, No. 91-1618, 1992 WL 174723, at * 12 (E.D.Pa. July 21, 1992) (Magnuson Aff., Ex. G); *see also* 12 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3022 at 171 (West 1997 and Supp. 2004); 13 Moore's Federal Practice at ¶70.02[4] (3d ed. 2004). Rule 70, "Judgment for Specific Acts; Vesting Title," provides, in pertinent part:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. * * * If real or personal property is within the district, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk.

Barbara Schultz for over two years has defied both the judgment of this Court and its order enforcing the Settlement Agreement. As a result of this failure to comply with the orders of this Court, the Court is authorized under its equitable powers and Rule 70 to convey title directly to Genmar by court order. This means of enforcing the settlement agreement is "a simple, effective means" to accomplish the same result as the conveyance order which Schultz seeks to defy. *See* 13 Moore's Federal Practice at ¶70.02[4]. The Court may transfer the property directly if (a) a judgment directs a party to execute a conveyance of land or to deliver deeds and that party fails to comply with the established time and (b) the property at issue is in the District of Minnesota. *See* Fed. R. Civ. P. 70.

Barbara Schultz has never contested her obligation to perform under the Settlement Agreement but merely asked for more time to pay Genmar the $65,000. Despite the extended "grace periods" this Court and Genmar has afforded her, she has defied both a judgment directing her to convey the property to Genmar and an Order of the Court expressly directing her to comply with the Settlement Agreement. Given these two years of defiance, it is highly unlikely that Schultz would comply with another order directing her to convey the property. Therefore, the only adequate remedy is for the Court to divest Schultz of her interest in the property and vest it in Genmar, so that the judgment has the effect of a conveyance executed in due form of law.

This Court's Order of Attachment with respect to this property, issued and filed for record over two years ago, takes priority over any subsequent liens, including the CIT judgment which became a lien against the property only because of Schultz's refusal to comply with the Settlement Agreement in a timely fashion. Therefore, to avoid any confusion Genmar respectfully asks the Court to expressly state in its Order vesting title of the property in Genmar

that this Order relates back to the Order of Attachment for the purposes of priority of interest in the property

## II. ATTORNEYS FEES

The Confession of Judgment also contains the following provision with respect to attorneys fees in enforcing the Confession of Judgment:

> 4. Schultz agrees that Plaintiffs may pursue enforcement procedures of Federal Rule of Civil Procedure 69(a) upon Plaintiff's motion and notice of motion in the event that Schultz fails to abide by payment terms as required by the Agreement. Schultz agrees that he shall be liable for the attorneys fees in enforcing the Confession of Judgment.

(Long Aff., Ex. D, ¶ 4, at 1-2.) Rule 70 authorizes this Court to hold a party who fails to comply with a court order to execute a conveyance of land or to deliver deeds within the specified time in contempt of court. A court may award attorney's fees to the moving party in a civil contempt proceeding pursuant to Rule 70. *See Rousseau v. 3 Eagles Aviation, Inc.*, No. 02-0208, 2004 WL 193108, *1 (E.D.La., Jan. 28, 2004) (citing *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) ( Magnuson Aff., Ex. H). The Court may impose whatever sanctions are necessary to compensate the moving party's injuries resulting from the contemnor's noncompliance. *See e.g. O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (quotation omitted); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir. 1983) (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 448-49 (1911)); *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 646 F.2d 800 (2d Cir. 1981). Genmar, pursuant to the Court's verbal instructions did not seek to compel compliance with the Court's Order enforcing the Settlement Agreement so that Schultz could have another opportunity to obtain a mortgage on the property. Although the Court granted Genmar its fees and costs in bringing that motion, Genmar did not pursue the fees in light of the Court's instructions and Schultz efforts to secure

the mortgage. However, Genmar has now been forced to incur the costs of two motions to obtain performance under the Settlement Agreement and Genmar now seeks the fees and costs associated with bringing both motions.

## CONCLUSION

Schultz has had multiple opportunities over a two-year period to time to perform under the Settlement Agreement and sell or transfer the property at issue. Rather than complying, Schultz has not performed her obligation, requiring Genmar to bring a motion to enforce the agreement and now another motion for contempt. Genmar cannot suffer additional delay. Therefore, Plaintiffs respectfully request that the Court divest Schultz's title in the property and vest title in Genmar. Plaintiffs also respectfully request that the Court award to Genmar the fees and costs related to bringing both enforcement actions.

Dated: June 17, 2004

BRIGGS AND MORGAN, P.A.

By s/ Kevin M. Magnuson

Kevin M. Magnuson (#306599)
2400 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 334-8400
Facsimile: (612) 334-8650

**ATTORNEYS FOR PLAINTIFFS**