United States District Court
District of Minnesota
Third Division

---

Genmar Holdings, Inc., Genmar Industries, Inc. an Indirect Subsidiary of Genmar Holdings, Inc., and Lund Boats, a Division of Genmar Industries, Inc.
Plaintiffs,

vs.

Gary Duane Schultz,

Defendant.

Case File No. 01-CV-639 (JRT/RLE)

**AFFIDAVIT OF BARARA SCHULTZ**

---

STATE OF MINNESOTA )
)SS:
COUNTY OF OTTER TAIL )

I, Barbara Schultz, being first duly sworn upon oath, state and allege as follows:

1. I am the wife of Gary Schultz and am intimately familiar with the proceedings in this matter. I am in receipt of a Motion for Contempt and Sanctions seeking to divest my interest and Gary's interest in Parcel Number R33000080047000, which is the farm that was formerly owned by my parents, Eugene and Lucille Poser, and which has been in our family for over one hundred years, (a century farm).

2. I have reviewed the Affidavits of James J. Long and Kevin M. Magnuson which were submitted in support of the motion.

3. I attach, as Exhibit A, a Notice of Entry and Statement of Judgment obtained from the Ottertail County Court Administrator showing that a judgment of $111,906.90 was entered on October 25, 2002, against myself, Gary, and the Sport Locker Embroidery Studio. That judgment, to the best of my knowledge, is a lien on the above-described real estate.

4. The judgment was docketed against myself and Gary as a result of a complaint filed by CitiGroup/Equipment Financing, Inc., which essentially sought to recover the leased embroidery equipment we used in our business. Pursuant to the terms of the Order of Attachment dated May 2, 2001, the leased equipment, to the best of my knowledge, remained in the exclusive possession and control of Genmar.

5. My sisters and myself attempted to raise funds sufficient to purchase the farm from Genmar for the amount of $65,000.00. We obtained a commitment from the First National Bank of Wadena for this sum if Genmar and CitiGroup would release their judgment liens against the property.

6. We forwarded to Genmar the commitment letter from the bank and provided this court with a copy (Exhibit B) by way of an attachment to my affidavit dated August 25, 2003.

7. In order to secure financing, I contacted CitiGroup directly to see if it would release its lien. A CitiGroup attorney told me that because the leased equipment remained in Genmar's possession, they could not release its lien since they could not anticipate the amount of money the equipment might ultimately sell for. The proceeds of any sale would be paid to CitiGroup in partial satisfaction of its judgment. I later learned Genmar had sold the equipment directly to a Lund employee. I did not own this equipment. It was leased. I was not in possession of the equipment at the time the lease expired. Genmar was aware that the equipment was leased inasmuch as the lease agreements were retained in the Embroidery Studio building at the time they took possession of the business. There was nothing I could do prevent the judgment from being entered by CitiGroup. The judgment was the result of Genmar's decision to sell the leased equipment, rather than to return it to CitiGroup.

8. My sisters and I cannot obtain financing sufficient to pay Genmar the $65,000.00 given the size of the liens against the property held by Genmar itself and CitiGroup.

9. Paragraph 4d of the settlement agreement signed by me on January 10, 2002, states as follows:

> Barbara shall use her best efforts to sell a portion of Parcel No. R33000080047000 within 120 days of the execution of this Agreement, of which no less than $65,000.00 of the proceeds shall be transferred to Plaintiffs, along with proof of documentation of the sale. If the parcel is not sold within 120 days of the execution of this agreement, Barbara shall execute a warranty deed to Plaintiffs.

I believe I completed my obligation as set forth in this paragraph of the settlement agreement.

10. Once it became apparent that my sisters and I could not obtain the loan to purchase Genmar's interest in the property, I executed the deed as prepared and requested by Genmar. Attached to this affidavit as Exhibit C is a copy of a letter dated June 29, 2004, from my former attorney, Brenda Velde, as well as a copy of the deed executed by me on June 24, 2004.

11. I see no reason why I am subject to a motion for contempt. I very much wanted to save my parents' farm and keep this property in the family. It has been in our family for over 100 years. I did everything I possibly could to keep the farm, but without Genmar's cooperation, I could not obtain a loan. Given my distressed economic circumstances, I was unable to otherwise buy, along with my sisters, our childhood home. Genmar is now seeking to punish me for my inability to raise $65,000.00 or to obtain Gary's signature, or to remove a judgment lien, which I could not avoid. I believe I have done everything I am required to do by the settlement agreement and have fully complied with Genmar's requests in all aspects.

12. Gary and I were informed by the Bureau of Prison Facilities that Gary cannot engage in any business activities or real estate transactions while he is incarcerated. Therefore, he has not been allowed to sign the deed. In any event, I have complied with the terms of the Settlement Agreement as they affect me.

FURTHER YOUR AFFIANT SAYETH NOT.

Barbara Schultz

Subscribed and sworn to before me
this 3rd day of November, 2004.

Notary Public

LORI L. ATHMANN
NOTARY PUBLIC—MINNESOTA
My Commission Expires JAN. 31, 2005